## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

MARK HAMILTON and
LINDA HAMILTON

                                Case No.
                                Hon.

          Plaintiffs,

vs.

SALEM TOWNSHIP,
MARCIA VANFOSSEN in her
individual and official capacity
WAYNE WALLAZY in his
individual and official capacity
ROBERT HEYL in his
individual and official capacity
PAUL UHEREK in his
individual and official capacity

jointly and severally,

          Defendants.
_____/

RAYMOND GUZALL III (P60980)
RAYMOND GUZALL III, P.C.
Attorney for Plaintiffs
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, MI 48334
(248) 702-6122
rayguzall@attorneyguzall.com
_____/

        There is no pending civil action arising out of a part of the transaction or
        occurrence alleged in this complaint.

### VERIFIED COMPLAINT AND DEMAND FOR JURY

NOW COME Plaintiffs, MARK HAMILTON and LINDA HAMILTON by and

through attorney, Raymond Guzall III, P.C., by Raymond Guzall III, and hereby

complain against SALEM TOWNSHIP, MARCIA VANFOSSEN in her individual and

official capacity, WAYNE WALLAZY in his individual and official capacity, ROBERT

HEYL in his individual and official capacity, PAUL UHEREK in his individual and official capacity, jointly and severally as follows:

## COMMON ALLEGATIONS

1. That at all times pertinent hereto, Plaintiff, MARK HAMILTON was a resident of Salem Township, State of Michigan.

2. That at all times pertinent hereto, Plaintiff, LINDA HAMILTON was a resident of Salem Township, State of Michigan.

3. Defendant Salem Township is a municipality located in Washtenaw County Michigan, and operates as a political subdivision under the laws of the State of Michigan and the United States of America.

4. At all times pertinent hereto, Defendant MARCIA VANFOSSEN was a trustee of Salem Township.

5. At all times pertinent hereto, Defendant WAYNE WALLAZY was a trustee of Salem Township.

6. At all times pertinent hereto, Defendant PAUL UHEREK was the treasurer of Salem Township.

7. At all times pertinent hereto, Defendant ROBERT HEYL was the Township Supervisor of Salem Township.

8. Plaintiff Mark Hamilton became the Fire Chief for Defendant Salem Township in 1991.

9. Plaintiff Linda Hamilton is the wife of Mark Hamilton, and has been so at all times pertinent in this lawsuit.

10. Plaintiff Mark Hamilton was terminated as the Fire Chief for Defendant Salem

Township on or about February 14, 2012.

11. This Court has jurisdiction based upon Plaintiffs federal claims, and venue is proper with this Court.

## COUNT I
## VIOLATION OF 1ST AND 14TH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA

12. Plaintiffs re-allege and incorporate Paragraphs 1 through 11 as though set forth in full word for word and paragraph for paragraph.

13. In June of 2010, recall petitions were submitted by Bonnie Cook for Defendants Heyl, Uherek and Wallazy.

14. Plaintiff Linda Hamilton and Bonnie Cook are very good friends.

15. Defendants were aware at the time of those recall petitions that Bonnie Cook and Linda Hamilton were very good friends.

16. Plaintiffs collected petitions and obtained signatures for the recall of Defendants Heyl, Uherek and Wallazy, engaging in matters of public concern.

17. Defendants Heyl, Uherek and Wallazy became aware that both Plaintiffs collected petitions and obtained signatures for the recall of Defendants Heyl, Uherek and Wallazy within 30 days of those petitions and signatures being submitted in June of 2010.

18. On or about July 26, 2010, Defendant Heyl sent mean spirited emails to Plaintiff Mark Hamilton questioning Mr. Hamilton's First Amendment Right to Free Speech in relation to his obtaining petitions and signatures to recall Defendants and Mr. Hamilton's free speech on those issues.

19. Plaintiff Mark Hamilton engaged in his First Amendment Right to Free Speech in

relation to his obtaining petitions and signatures to recall Defendants.

20. Plaintiff Linda Hamilton engaged in matters of public concern and in her First Amendment Right to Free Speech in relation to her obtaining petitions and signatures to recall Defendants.

21. Both Plaintiffs also openly supported Brien Witkowski, Trustee for Salem Township, and David Trent (clerk for Salem Township), and those 2 individuals were being recalled by another group of citizens.

22. Defendants were aware that Plaintiffs openly supported Brien Witkowski, Trustee for Salem Township and David Trent (clerk) and retaliated against Plaintiffs because of that fact, in violation of Plaintiffs' Constitutionally protected rights.

23. Support of a political candidate or candidates falls within the scope of the right of political association, and is a matter of public concern.

24. Plaintiff Linda Hamilton was also illegally retaliated against by Defendants for exercising her right to intimate association with her husband, Mark Hamilton.

25. Plaintiff Mark Hamilton was also illegally retaliated against by Defendants for exercising his right to intimate association with his wife, Linda Hamilton.

26. Plaintiff Hamilton did not wear any clothing associated with the Salem Township Fire Department at the time he collected signatures and spoke out about the recall of Defendants, and in favor of the recall of Defendants.

27. Plaintiff Mark Hamilton's speech was related to a matter of public concern, recalling publicly elected officials of Salem Township.

28. Plaintiff Mark Hamilton used his own personal vehicle at the time he collected signatures and spoke out about the recall of Defendants.

29. Plaintiff Mark Hamilton's speech was a substantial and/or motivating factor in Defendant's decision to penalize him and retaliate against him, and there is a causal connection between his protected activity and the adverse action taken against him by Defendants which would deter a person of ordinary firmness from continuing to engage in that conduct.

30. On or about July 26, 2010, with those emails from Defendant Heyl, retaliation began against Plaintiff Mark Hamilton in violation of his First and Fourteenth Amendment Rights pursuant to the U. S. Constitution.

31. In September of 2010, Plaintiff Mark Hamilton along with other firefighters additionally engaged in matters of public concern by publicly supporting the recall of Defendants Heyl, Uherek and Wallazy by being listed on a post card for the recall by a PAC (political action committee).

32. Plaintiff Mark Hamilton's engaging in his protected Constitutional rights did and adversely affect or disrupt the Defendant Township or other named Defendants from operating efficiently or effectively.

33. It is essential for public employees to be able to speak out freely and express themselves freely about matters of public concern without fear of retaliatory dismissal.

34. Throughout Plaintiff Mark Hamilton's career as the Fire Chief for Salem Township over about 20 years, he could only be fired for just cause.

35. Around late October of 2010, Defendants changed the employment status of the Fire Chief Mark Hamilton to that of an at will employee, in retaliation for him engaging in Constitutionally protected activity, such as his Freedom of Speech

and Association afforded by the U. S. Constitution.

36. In December of 2011, Defendant Wallazy wanted to introduce a motion to terminated Plaintiff Mark Hamilton, yet Defendants Heyl and Uherek told him now is not the time.

37. A few months after December, 2011, Plaintiff Mark Hamilton was terminated as the Fire Chief for Defendant Salem Township, and replaced with someone who was not nearly as qualified as Mark Hamilton, and did not have the experience to do that job.

38. Plaintiff Mark Hamilton had a liberty interest in not being denied employment for exercising his First Amendment right to freedom of association.

39. After July 2010, Defendants took a series of wrongful actions against Plaintiff Mark Hamilton in retaliation against him to force him to resign, such as making him have mandatory office hours, yet office hours were never mandatory prior.

40. After Defendants illegally terminated the employment of Plaintiff Mark Hamilton, the Defendants did not force the new Fire Chief to have mandatory office hours.

41. After July 2010, Defendants forced Plaintiff Mark Hamilton to utilize his personal vehicle for things that he had utilized a Township vehicle in the past.

42. After July 2010, Defendants would not reimburse Plaintiff Mark Hamilton for using his own personal vehicle for work related activity.

43. Yet, the new Fire Chief who replaced Plaintiff Mark Hamilton has been paid reimbursement for using his own personal vehicle for work related activity.

44. Defendants continued to attempt to force Plaintiff Mark Hamilton to resign.

45. Sometime after July 2010, the Township hired Dennis Draplin as the Deputy

Supervisor for the Defendant Township.

46. In January of 2011, Defendant Heyl indicated he would appoint Dennis Draplin to the position of Deputy Supervisor, and that his claimed primary function would be to interface with the fire department.

47. Dennis Draplin was appointed in whole or in part to continue retaliation against Plaintiff Mark Hamilton and to push Mr. Hamilton to quit his job.

48. In February of 2011, Defendant Heyl cut the Salem Fire Department budget significantly, budgeting for only 280 runs annually.

49. Mr. Witkowski publically stated in February of 2011 that Defendant Heyl was setting up the Fire Chief Mark Hamilton to fail.

50. In February of 2011, the Salem Fire Department was the only department which received massive cost reductions.

51. Dennis Draplin at a public meeting stated that Plaintiff Mark Hamilton should not have facial hair.

52. Dennis Draplin then forced Plaintiff Mark Hamilton to do another fit test for a firefighters mask, even though the person who normally performed the fit tests and who trained to do the fit tests (Mark Kimler) had already tested Plaintiff Mark Hamilton and he passed the test.

53. During that fit test by Dennis Dratlin, Mr. Draplin put his hand in the mask and ran it up the chin and nose of Plaintiff Mark Hamilton.

54. In the history of the Salem Township fire Department, no one ever put their hands upon another firefighter in a mask fit test.

55. In the history of the Salem Township fire Department prior to Mr. Draplin

performing a mask fit test on Mr. Hamilton, each firefighter put on their own mask and the machine would indicate a pass or fail.

56. Dennis Draplin then sent out an email in April of 2011 to the Salem Township Supervisor and Board of Trustees that Mark Hamilton failed his mask fit test.

57. The interim Fire Chief, Ferman (Ed) Rohraff, was not medically cleared to wear a mask before he was appointed as the interim Fire Chief.

58. Therefore, the fact that interim Fire Chief, Ferman (Ed) Rohraff, could not wear a mask is further support for Plaintiff's claim that he was being retaliated against by Defendants as it related to him having to wear a mask.

59. In March of 2011, in a meeting with Draplin, Heyl and the Fire Chief Mark Hamilton, it was agreed that the Handyman would move the small fire truck for snow removal and start them weekly under the supervision of the Supervisor Defendant Heyl.

60. In April of 2011, Defendant Heyl issued a reprimand to Plaintiff Mark Hamilton because he claims the small fire truck would not start.

61. Plaintiff Hamilton as the Fire Chief was never notified that trucks would not start, as the handyman was starting them under the supervision of the Supervisor, Defendant Heyl.

62. In April of 2011, Plaintiff Linda Hamilton was denied a certificate of zoning compliance for her small business in Salem Township.

63. Only after Plaintiff Linda Hamilton indicated that she would be filing a lawsuit because she was illegally denied a certificate of occupancy for her small business in Salem Township, was the matter resolved in her favor.

64. In May of 2011, Plaintiff Mark Hamilton was reprimanded for a wireless router being kept in a locked room, under the control of Supervisor Defendant Heyl.

65. Plaintiff Mark Hamilton should not have been reprimanded as he had no access to that locked room.

66. Around May or June of 2011, Trustee Defendant Wallazy referred to Dennis Draplin as the Deputy Fire Chief, yet Mr. Draplin was not a part of the Salem Township Fire Department.

67. In September of 2011, Defendants Wallazy, Uherek, Heyl and VanFossen voted to sue Plaintiff Linda Hamilton along with David Trent and Barb McCabe for a claimed error in a deferred compensation pension plan at Salem Township.

68. Salem Township then filed a lawsuit against Plaintiff Linda Hamilton, David Trent and Barb McCabe pursuant to that vote by the individually named Defendants.

69. Plaintiff Linda Hamilton was sued by Defendants in retaliation against her for her engaging in her Constitutional rights as stated herein.

70. Approximately 30 other individuals were involved in that claimed error regarding the deferred compensation pension plan at Salem Township, yet only Plaintiff Linda Hamilton, David Trent and Barb McCabe were sued by Defendants, further supporting the fact that Defendants retaliated against Plaintiff Linda Hamilton for engaging in her Constitutional rights.

71. In addition, Carol Liogghio allegedly owed twice the amount of money owed by Plaintiff Linda Hamilton in regards to the claimed error regarding the deferred compensation pension plan at Salem Township, yet Carol Liogghio was not a named Defendant in the lawsuit filed by Salem Township.

72. In November of 2011, Dennis Draplin asked Plaintiff Mark Hamilton about updates to the Rules and Regulations involving the Fire Department.

73. Mark Hamilton suggested to Dennis Draplin that a meeting take place to review the work completed to date.

74. Mr. Draplin never held a meeting to discuss with Mr. Hamilton the work completed to date.

75. About 2 months later Defendant Heyl stated that Mark Hamilton was deficient in not providing an update to the Board, in continuing to retaliate against Mr. Hamilton.

76. To date, no substantial updates have been made by Defendants to the Rules and Regulations involving the Salem Township Fire Department.

77. The fact that no substantial updates have been made by Defendants to the Rules and Regulations involving the Fire Department to date, from the time they requested such from Plaintiff Mark Hamilton, is further proof that Defendants were retaliating against Mark Hamilton.

78. In January of 2012, Defendant Supervisor Hyel demanded answers from Mark Hamilton concerning Defendant Treasurer Uherek's question alleging insubordination.

79. Defendant Uherek's Question was about "swearing in" firefighters at a scene.

80. In January of 2012, Defendant Supervisor Hyel also demanded hundreds, if not thousands of pages of training documentation for review, which was merely busy work, trying to force Mark Hamilton to resign, and was continued retaliation.

81. The documentation had to be copied one page at a time by Mark Hamilton since

he was not given access to a copier with a paper feeder.

82. Plaintiff Linda Hamilton operates the U. S. post office in Salem Township and has done so since 1999.

83. Some time after June of 2010, Defendants purposely routed mail around Plaintiff Linda Hamilton by sending it to Plymouth and South Lyon for delivery.

84. The Salem Township clerk still receives the Salem Township election mail through South Lyon.

85. Around November of 2011, Defendants illegally entered onto the property of Plaintiffs in a claimed attempt to assess their property, in violation of MCL 750.552 and other applicable law.

86. Plaintiff Mark Hamilton complained about the trespass and illegal entry.

87. In December of 2011, Mark Hamilton was told in writing by Defendant Heyl that he had no right to interfere with other department duties.

88. Defendant's further retaliated against both Plaintiffs by assessing taxes around February of 2012 on a barn built by Plaintiffs at $110,000.00 even though Plaintiffs provided documentation showing that the barn was built for approximately $30,000.00, and only should have been assessed at the approximate $30,000.00 amount.

89. In March of 2012, Plaintiff Linda Hamilton attended a Board of Review (BOR) in Salem Township to seek a fair valuation of the approximate $30,000.00 which Plaintiffs' barn should have been assessed.

90. The BOR only reduced the valuation slightly from $110,000.00 to $93,000.00.

91. Linda Hamilton asked Frank D'Agostini, member of BOR why real relief was not

approved. Frank D'Agostini told Plaintiff Linda Hamilton that the BOR had been instructed by the Salem Township Assessor Amy Thornton not to provide relief to the Hamiltons (Plaintiffs) below $93,000.00, in further retaliation against Plaintiffs.

92. Plaintiffs then engaged the State of Michigan to have their barn properly assessed, and it was eventually assessed at around $40,000.00.

93. In March of 2012 the Salem Township Board of Trustees authorized attorney Ed Plato to investigate fire department issues.

94. An investigation was allegedly performed by another law firm at a cost of approximately $20,000.00 and focused primarily on Plaintiffs Mark and Linda Hamilton's use of township cell phones and township issued credit cards during their time of public service. No wrong doing was found.

95. No other individuals except Plaintiffs were investigated for use of Township cell phones or credit cards, yet several other individuals possessed Township cell phones and credit cards.

96. In April of 2012 Trustee Bejin and Defendant Uherek introduced a motion to take over a 501(c)(3) entity, the Salem Community Events, of which Linda Hamilton is an officer. That motion was later withdrawn.

97. Plaintiff Linda Hamilton was on the Board for the Salem Community Events since 2009, and part of that organization since 2002, and at no time in the past had the Salem Board of Trustees made any attempt to take over that organization.

98. Others who collected signatures for the recall of Defendants also served that organization (Salem Community Events).

## COUNT II
## VIOLATION OF THE MICHIGAN OPEN MEETINGS ACT

99. Plaintiffs re-allege and incorporate Paragraphs 1 through 98 as though set forth in full word for word and paragraph for paragraph.

100. Defendant Township recently violated the Michigan Open Meetings Act (MCL 15.261 et seq.) by not publicly discussing how they narrowed the field for the position of the building coordinator from about 30 candidates to 2.

101. Plaintiff Linda Hamilton applied for the position of building coordinator and is very qualified for that position, and is not one of the two candidates selected from that pool of about 30.

102. The denial of employment to Linda Hamilton is further retaliation against her and her husband Mark Hamilton for them engaging in Constitutionally protected activity as stated herein.

103. On Tuesday, December 10, 2013, Defendant Salem Township gave the position of building coordinator to Laurie O'Brien at an open meeting.

104. Also on Tuesday, December 10, 2013, Defendant Salem Township created a brand new position called "administrative assistant 2", and gave that position to Anne Alexander on that date, without posting that position.

105. Defendant Salem Township's own policy manual states that "new positions will be posted on the Township's website".

106. Therefore, Defendant Salem Township violated it's own policy.

107. The job of "administrative assistant 2" includes providing administrative support for the Fire Chief.

108. Plaintiff Linda Hamilton was never allowed to apply for the position of

"administrative assistant 2", as it was never posted pursuant to Defendant Salem Township's own policy manual.

109. Plaintiff Linda Hamilton was the most qualified person for the "administrative assistant 2" job.

110. From 1991 until February 14, 2012, Plaintiff Linda Hamilton was the administrative assistant to the Fire Chief and was not paid for doing that work.

111. Defendant Salem Township has now made the job of administrative assistant to the Fire Chief a paying job, and did not even allow Plaintiff Linda Hamilton to apply for that job, in retaliation against her for her engaging in her Constitutional rights as stated herein.

112. Plaintiff Linda Hamilton had a liberty interest in not being denied public employment for exercising her First Amendment right to freedom of speech and freedom of association.

113. Plaintiff Linda Hamilton was denied the opportunity to speak on the matter of the public employment position of "assistant manager 2".

114. Defendant Salem Township, has liability in this case pursuant to 42 U.S.C. 1983, Under Color of Law.

115. Case law holds that governmental immunity is not a bar to Plaintiffs' claims. "One such statutory limitation involves governmental immunity. In the governmental tort liability act (GTLA), the Legislature expressly stated that "[e]xcept as otherwise provided in this act, a governmental agency is immune from tort liability if [it] is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). Accordingly, a governmental agency is immune

unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government. The GTLA allows suit against a governmental agency in only five areas. However, there are other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act. Further, municipalities may be liable pursuant to 42 USC 1983. *Monell v. New York City DSS,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)." *Mack v City of Detroit*, 467 Mich 186, 195; 649 NW2d 47, 52 (2002), emphasis added.

116. Defendant Salem Township did have an illegal policy, custom and/or practice in that it permitted violations of Plaintiffs constitutional rights to occur by its highest policy makers in the Township, and engaged in and allowed for retaliation against Plaintiffs in violation of the law.

117. All named individual Defendants may also be held liable in their official and individual capacity and acting under color of law, as they retaliated against Plaintiffs as stated herein, and clearly did so as retaliation against Plaintiffs for engaging in Constitutionally protected activity, and therefore are not protected by any immunity.

118. The laws hold, "The Supreme Court, Justice O'Connor, held that: (1) state officers may be personally liable for damages under § 1983 based upon actions taken in their official capacities; (2) officers' potential liability is not limited to acts under color of state law that are outside their authority or not essential to operation of state government, but also extends to acts within their authority and necessary to performance of governmental functions; and (3) Eleventh

      Amendment does not erect barrier against suits to impose individual and personal liability on state officers under § 1983." *Hafer v Melo*, 502 US 21; 112 S Ct 358; 116 L Ed 2d 301 (1991).

119. As a result of these practices stated herein, Plaintiffs have been greatly damaged, in violation of the afore-stated causes of action, in that they have suffered and will be forced to suffer great economic and emotional harm, a loss of earning capacity, salary loss, emotional injuries with pain and suffering, including emotional distress and mental anguish, all of which they have suffered as a result of the treatment by Defendants named herein, and from which Plaintiffs currently suffer and can reasonably be expected to suffer from in the future.

120. The wrongful actions of Defendants have damaged, and continue to damage Plaintiffs, calling for Plaintiffs back pay, future pay, medical and other benefits, pension, litigation costs, interest and attorney fees per statute and other law, as well as exemplary and/or punitive damages.

121. When Plaintiff Mark Hamilton was changed from a "just cause" employee to an "at will" employee, Mark Hamilton was not given the benefits that other "at will" employees were receiving, which were holiday pay, vacation pay, pro-rated health care and 10% of his annual salary should have gone toward his pension, but did not.

122. The adverse actions taken against both Plaintiffs by all named Defendants were motivated by both Plaintiffs engaging in protected activity as set forth herein.

123. Plaintiffs have been damaged well in excess of the jurisdictional amount of

$75,000.00.

WHEREFORE, your Plaintiff's prays for judgment against Defendants, jointly and severally, in an amount in excess of the jurisdictional amount of $75,000.00, including but not limited to past, current and future damages, exemplary damages and/or punitive damages, and reasonable attorney fees per statute and other laws or court rules, plus costs and interest as afforded by law or court rule. Plaintiffs further requests all other relief the Court deems appropriate and that Plaintiffs may be afforded by equity or law.

The facts as stated within this Verified Complaint are true to the best of my knowledge, information and belief, and I will testify in accord with the facts herein.

_____
Mark Hamilton

_____
Linda Hamilton

## JURY DEMAND

Plaintiffs demand trial by jury in this matter.

Respectfully submitted,

RAYMOND GUZALL III, P.C.

_____
RAYMOND GUZALL III (P60980)
Attorney for Plaintiffs
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, MI 48334
(248) 702-6122